1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GENARO BRANDELL PATTERSON,

Petitioner,

v.

ROBERT BURTON,[1]

Respondent.

No.  2:16-cv-0654 DB P

ORDER AND FINDINGS AND RECOMMENDATIONS

Petitioner is a state prisoner proceeding through counsel with a petition for a writ of habeas corpus under 28 U.S.C. § 2254.  Petitioner challenges his convictions imposed by the Sacramento County Superior Court in 2013 for pimping.[2]  Petitioner alleges ineffective assistance of trial and appellate counsel.  For the reasons set forth below, this court will recommend the petition be denied.

////

---

[1] After he filed his habeas petition, petitioner was transferred to the California Health Care Facility ("CHCF").  (See ECF No. 18.)  Accordingly, CHCF warden Robert Burton is substituted for the prior respondent, Elvin Valenzuela, the warden of the California Men's Colony.  See Rule 2(a), Rules Gov'ing § 2254 Cases; Brittingham v. United States, 982 F.2d 378, 379 (9th Cir. 1992).

[2] Petitioner was also convicted of false imprisonment, assault by means of force likely to produce great bodily injury, second degree robbery, and dissuading a witness.  The claims raised in his petition challenge only the convictions for pimping.

1

**BACKGROUND**

2

**I. Facts Established at Trial**

3

The California Court of Appeal for the Third Appellate District provided the following

4

factual summary:

5
6
7
8
9
10
11

> On the morning of November 23, 2012, defendant was driving L.C., a woman in her early twenties, and her toddler son from Elk Grove to Richmond. Enroute, a verbal and physical fight broke out in the car between L.C. and M.Y., another woman in her early twenties, who was riding in the front passenger seat. L.C. called 911 and frantically pleaded for help but was unable to report her location. The line remained open throughout the conflict. Eventually, defendant stopped the car at his niece's home in Sacramento, pulled L.C. out of the car, threw her cell phone over a brick fence, and beat her. L.C. escaped, leaving her son behind. During the investigation that followed, police discovered evidence showing that defendant was a pimp and that L.C. and M.Y., along with another woman, A.R., were prostitutes working for him.

12

People v. Patterson, No. C075287, 2015 WL 2212222, at *1 (Cal. Ct. App. May 11, 2015)

13

(footnote omitted).

14

Because petitioner did not raise issues regarding the pimping convictions on appeal, the

15

Court of Appeal did not set out the factual basis for those convictions. This court has reviewed

16

the trial transcript and provides the following overview of the evidence regarding those

17

convictions, the only convictions at issue in petitioner's federal habeas petition.

18

**A. Officers' Testimony at Trial**

19

Lacey C. was the woman who made the 911 call from petitioner's car on November 23,

20

2012. Later that day, she was treated at a hospital in Elk Grove for human bite wounds. Officer

21

Lindsey Goesch testified that she interviewed Lacey C. on November 23 at the hospital. She

22

testified that Lacey C. told her the following. Lacey C. lived with petitioner, Melissa Y., and a

23

woman named Stephanie. Stephanie and Melissa worked as prostitutes and advertised their

24

services on myredbook.com. Lacey C. directed Goesch to that website if she wanted to contact

25

Stephanie or Melissa Y. (3 RT 761-67.[3])

26
27
28

---

[3] Respondent lodged copies of the appellate and habeas briefs as well as the Record of Transcript ("RT") and Clerk's Transcript ("CT") from trial. (See ECF No. 17.) Records are referred to by their Lodged Document ("LD") number. Respondent appended copies of state court opinions to his Answer. (See ECF No. 14.)

Lacey C. also described the events resulting in her injuries to Goesch. Earlier that day, petitioner, Lacey C., Melissa Y., and Lacey C.'s son were returning to Elk Grove in petitioner's car. Petitioner provoked Melissa Y. to fight Lacey C. Melissa Y. then hit, punched, bit, and scratched Lacey C. Petitioner locked the doors and windows so Lacey C. could not get out of the car. Petitioner then drove to his niece's house and pulled Lacey C. from the car in a "headlock" that was so tight she felt she was going to black out. Lacey C. asked Goesch for an emergency restraining order to protect her from petitioner. (3 RT 767-73.)

Goesch interviewed Lacey C. again the following day. Lacey C. told Goesch that she worked as a prostitute for petitioner, who was her pimp. She also described other women working for petitioner as prostitutes. She told Goesch that petitioner kicked her out of the house on the day after Thanksgiving, November 23, when she told him she no longer wanted to work as one of his prostitutes. (3 RT 773-76.)

Based on the information from Lacey C., officers arrested petitioner the night of November 24, 2012. He was initially charged with kidnapping, child endangerment, and assault. By the time of trial, petitioner was charged with pimping three women: Lacey C., Melissa Y., and Alisandra R.; kidnapping; assault with force likely to produce great bodily injury; robbery; malicious dissuasion of a witness; and obstruction of cell phone use to summon law enforcement.

Detective Mark Bearor testified that Melissa Y. was initially contacted by telephone on November 27, 2012. (2 RT 399). While Melissa Y. denied being in the car with petitioner and Lacey C. on November 23, Bearor testified that she told him petitioner was her pimp and that Lacey C. was an "escort." (2 RT 420-21.)

Officer William Hancock testified that officers contacted Melissa Y. through her phone number and her myredbook.com posting. (3 RT 826-27.) In December 2012, officers took Melissa Y. into custody on an outstanding warrant. Hancock questioned her and she told him that the day before Thanksgiving 2012, she, petitioner, Lacey C, and a woman named Stephanie drove to Oakland. Melissa Y. stated that she engaged in prostitution and gave the money she made to petitioner. (3 RT 828-29.) She told Hancock that Lacey C. had rented room #137 at a Motel 6 in Oakland for that purpose. Melissa Y. did the same in Sacramento on Thanksgiving

3

1   day and left the money in petitioner's car for him.  (3 RT 830.)  Melissa Y. identified petitioner to

2   Hancock as her pimp and also as Lacey C.'s pimp.  (3 RT 831.)

3         Felicia Paul testified that she worked at a Motel 6 in Oakland.  She gave police a receipt

4   showing that Lacey C. rented room # 137 there on November 21, 2012.  (4 RT 1089-90.)  Paul

5   also identified a picture of Lacey C. as the woman who had rented the room.

6         Detective Hancock testified that he investigated petitioner's connections to prostitution

7   and pimping.  (3 RT 817.)  Prior to working on petitioner's case, he was familiar with the website

8   myredbook.com.  (3 RT 821.)  Using Lacey C.'s phone number, he was able to locate an ad for

9   her in December 2012.  (3 RT 822-23.)  He located an ad for Alisandra R. in January 2013 by

10  using her phone number.  (3 RT 824-26.)  Hancock also testified about internet ads posted for

11  Alisandra R., Lacey C., and Stephanie F. in December 2012 and January 2013 that were seen by

12  the user of a computer found in petitioner's home.  (4 RT 933-44.)

13        Hancock conducted a search of petitioner's residence in January 2013.  That search

14  recovered, among other things, a book authored by petitioner entitled "Pimp, the Manuscript, The

15  Game is to Be Sold Not Told."  (3 RT 840.)  Hancock also seized two cell phones that belonged

16  to Alisandra R. and a third cell phone in petitioner's car that had a number of messages referring

17  to prostitution.  (3 RT 842.)

18        Hancock testified he encountered Lacey C. when he was searching a car petitioner had

19  rented that was parked outside the courthouse.  He asked Lacey C. if she worked as a prostitute;

20  she first said "no," and then said "it's only a misdemeanor, and that she saves lives with the

21  services she provides."  (3 RT 842-43.)

22        Hancock also testified about a large number of text messages between Lacey C. and

23  petitioner and between petitioner and others, particularly Alisandra R., which indicated the

24  women were engaging in prostitution and petitioner was their pimp.  (3 RT 844-862; 4 RT 880-

25  932.)  In one message, petitioner identified his occupations as writing books, publishing books,

26  rapping, and pimping.  (3 RT 860.)

27  ////

28  ////

**B.  Trial Testimony of Lacey C. and Melissa Y.**

Lacey C. testified at trial that what she told officers when she was interviewed in November 2012 was "a bunch of lies." (2 RT 541-550; 3 RT 606-16.)

Lacey C. testified that she met petitioner in 2010. (2 RT 445.) She admitted working as a prostitute before that time. (2 RT 447, 457.) She also testified that she had advertised as a prostitute on myredbook.com in the past. (2 RT 457.) However, she consistently denied ever working as a prostitute after she met petitioner. (2 RT 513-14.) Lacey C. testified she did not know petitioner had been previously convicted of pimping. (2 RT 512.) She knew he had been to prison but did not know why. (Id.) When confronted with her arrests for prostitution in 2012, she testified that those were "mistakes" because she was working as an escort not a prostitute. (2 RT at 509-11.)

Melissa Y. also testified at trial. At the time Melissa Y. met petitioner, not long before his arrest, she knew him as a "respectable pimp." (2 RT 287.) She testified that after meeting him, she worked as a prostitute and petitioner was her pimp. (2 RT 285, 290-98.) She was taken on at least two trips with petitioner and Lacey C. for the purpose of engaging in prostitution. Melissa Y. testified that she was familiar with the website myredbook.com, which was used to advertise prostitution and which she used herself. (2 RT 312-13.) She testified that petitioner talked with her about changing her photographs on myredbook.com. (2 RT 313.)

The prosecution also presented testimony about prior prostitution activity by Lacey C. and prior pimping by petitioner.   (See 4 RT 947-49 (August 2012 investigation showed Lacey C. engaged in prostitution); 4 RT 1036-38 (in September 2012 Lacey C. informed a police officer that she had been a "hooker" and had worked for petitioner); 4 RT 955-64 (testimony regarding petitioner's pimping activity in 2002); 4 RT 1093-1133 (during investigations in 2005, petitioner asked an undercover officer to work for him as a prostitute; several women told officers they worked as prostitutes for petitioner; and petitioner admitted in an interview that he was a pimp for several women and had sent them to other states to work as prostitutes).

////

////

1

### C.  Defense Case

Genelle Patterson, petitioner's adult daughter, testified that petitioner spent the day before Thanksgiving 2012 at her house.  (4 RT 1161.)  Latrice Patterson, petitioner's niece, testified that she saw Lacey C. after the incident in petitioner's car on November 23, 2012.  She testified that Lacey C. was frantic and crying.  She testified that Lacey C. said petitioner "choose the black girl" and that he had "kidnapped my baby."  (4 RT 1174 - 5 RT 1182; 5 RT 1189-90.)  Brenda Patterson Usher, petitioner's mother, testified that petitioner and Lacey C. came to her house on Thanksgiving 2012.  Later, Melissa Y. arrived and told Usher she had fallen down three flights of stairs.  (5 RT 1196-99.)

### D.  Jury Instructions re Pimping Charges

The jury was informed that petitioner was charged with the following pimping crimes:  (1) pimping Lacey C. between November 14, 2012 and January 25, 2013; (2) pimping Alisandra R. between November 14, 2012 and January 25, 2013; and (3) pimping Melissa Y. between November 21, 2012 and January 23, 2013.  (5 RT 1433-35.)

The jury was instructed that to find petitioner guilty of pimping, it had to find:

> One:  The Defendant knew that the person named in Counts 1, 2 and/or 3 was a prostitute and
>
> Two:  The money or proceeds that the person named in Counts 1, 2 and/or 3 earned as a prostitute supported the Defendant in whole or in part.

(5 RT 1394.)

## II.  Procedural Background

### A.  Judgment and Sentencing

In 2013, a jury convicted petitioner of three counts of pimping in violation of California Penal Code § 266h(a) and single counts of false imprisonment, assault by means of force likely to produce great bodily injury, second degree robbery, and dissuading a witness.  Petitioner was sentenced to a state prison term of 17 years, four months.

////

////

6

1

**B.  State Appeal, State Habeas, and Federal Proceedings**

2      Petitioner filed an appeal.  (LD 1.)  The California Court of Appeal denied it on May 11,

3  2015.  Patterson, 2015 WL 2212222.  The California Supreme Court denied petitioner's petition

4  for review on July 22, 2015.  (ECF No. 14-2.)

5      Petitioner then sought habeas corpus relief in the state courts.  On July 10th, 2015, he filed

6  a petition for a writ of habeas corpus in Sacramento County Superior Court that raised the claims

7  he now sets out in the federal petition:  ineffective assistance of counsel for the failure to

8  challenge:  (1) the search of his cell phone; (2) the probable cause for a search warrant; and (3)

9  the seizure of items outside the scope of the search warrant.  In addition, petitioner alleged

10  ineffective assistance of appellate counsel for failing to raise these ineffective assistance of

11  counsel claims on appeal.  (LD 5.)  On November 10, 2015 the state superior court denied the

12  petition.  (ECF No. 14-3.)  Petitioner raised the same claims in the California Court of Appeal and

13  California Supreme Court.  (LD 9, 10.)  Both courts denied the petitions without comment.  (ECF

14  Nos. 14-7, 14-8.)

15              **STANDARDS OF REVIEW APPLICABLE TO HABEAS CORPUS CLAIMS**

16      An application for a writ of habeas corpus by a person in custody under a judgment of a

17  state court can be granted only for violations of the Constitution or laws of the United States.  28

18  U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or

19  application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502

20  U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

21      Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

22  corpus relief:

23              An application for a writ of habeas corpus on behalf of a person in
              custody pursuant to the judgment of a State court shall not be granted
24              with respect to any claim that was adjudicated on the merits in State court
              proceedings unless the adjudication of the claim –
25
              (1) resulted in a decision that was contrary to, or involved an
26              unreasonable application of, clearly established Federal law, as
              determined by the Supreme Court of the United States; or
27

28  ////

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Greene v. Fisher, 565 U.S. 34, 37 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "'may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably.'" Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 569 U.S. 58, 64 (2013) (citing Parker v. Matthews, 567 U.S. 37 (2012)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct." Id. at 1451. Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. Carey v. Musladin, 549 U.S. 70, 76-77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003) (quoting Williams, 529 U.S. at 405-06). "Under the 'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] [Supreme] Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.'" Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (quoting Williams, 529 U.S. at 413); Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 411; see also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Andrade, 538 U.S. at 75 ("It is not

1    enough that a federal habeas court, in its independent review of the legal question, is left with a

2    firm conviction that the state court was erroneous." (Internal citations and quotation marks

3    omitted.)).  "A state court's determination that a claim lacks merit precludes federal habeas relief

4    so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."

5    Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652,

6    664 (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a

7    state prisoner must show that the state court's ruling on the claim being presented in federal court

8    was so lacking in justification that there was an error well understood and comprehended in

9    existing law beyond any possibility for fairminded disagreement."  Richter, 562 U.S. at 103.

10        There are two ways a petitioner may satisfy subsection (d)(2).  Hibbler v. Benedetti, 693

11   F.3d 1140, 1146 (9th Cir. 2012).  He may show the state court's findings of fact "were not

12   supported by substantial evidence in the state court record" or he may "challenge the fact-finding

13   process itself on the ground it was deficient in some material way."  Id. (citing Taylor v. Maddox,

14   366 F.3d 992, 999-1001 (9th Cir. 2004)); see also Hurles v. Ryan, 752 F.3d 768, 790-91 (9th Cir.

15   2014) (If a state court makes factual findings without an opportunity for the petitioner to present

16   evidence, the fact-finding process may be deficient and the state court opinion may not be entitled

17   to deference.).  Under the "substantial evidence" test, the court asks whether "an appellate panel,

18   applying the normal standards of appellate review," could reasonably conclude that the finding is

19   supported by the record.  Hibbler, 693 F.3d at 1146 (9th Cir. 2012).

20        The second test, whether the state court's fact-finding process is insufficient, requires the

21   federal court to "be satisfied that any appellate court to whom the defect [in the state court's fact-

22   finding process] is pointed out would be unreasonable in holding that the state court's fact-finding

23   process was adequate."  Hibbler, 693 F.3d at 1146-47 (quoting Lambert v. Blodgett, 393 F.3d

24   943, 972 (9th Cir. 2004)).  The state court's failure to hold an evidentiary hearing does not

25   automatically render its fact-finding process unreasonable.  Id. at 1147.  Further, a state court may

26   make factual findings without an evidentiary hearing if "the record conclusively establishes a fact

27   or where petitioner's factual allegations are entirely without credibility."  Perez v. Rosario, 459

28   F.3d 943, 951 (9th Cir. 2006) (citing Nunes v. Mueller, 350 F.3d 1045, 1055 (9th Cir. 2003)).

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). "[I]f the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, [this court] may consider both decisions to 'fully ascertain the reasoning of the last decision.'" Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc) (quoting Barker v. Fleming, 423 F.3d 1085, 1093 (9th Cir. 2005)). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 568 U.S. 289, 293 (2013). When it is clear, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

If a petitioner overcomes one of the hurdles posed by section 2254(d), the federal court reviews the merits of the claim de novo. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised."). For the claims upon which petitioner seeks to present evidence, petitioner must meet the standards of 28 U.S.C. § 2254(e)(2) by showing that he has not "failed to develop the factual basis of [the] claim in State court proceedings" and by meeting the federal case law standards for the presentation of evidence in a federal habeas proceeding. See Cullen v. Pinholster, 563 U.S. 170, 186 (2011).

10

**ANALYSIS**

Petitioner raises four claims.  He argues his trial attorney was constitutionally ineffective when he failed to challenge the search of petitioner's cell phone, the probable cause for the warrant, and the scope of the warrant.  In addition, he contends his appellate attorney rendered ineffective assistance when he failed to raise these three claims on appeal.

**I.  Legal Standards for Ineffective Assistance of Counsel Claims**

To succeed on a claim of ineffective assistance of counsel, a petitioner must show that (1) his counsel's performance was deficient and that (2) the "deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984).  Counsel is constitutionally deficient if his or her representation "fell below an objective standard of reasonableness" such that it was outside "the range of competence demanded of attorneys in criminal cases." Id. at 687-88 (internal quotation marks omitted).  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011).

A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697), amended and superseded on other grounds, 385 F.3d 1247 (9th Cir. 2004); United States v. Ray, No. 2:11-cr-0216-MCE, 2016 WL 146177, at *5 (E.D. Cal. Jan. 13, 2016) (citing Pizzuto, 280 F.3d at 954), aff'd, 735 F. App'x 290 (9th Cir. 2018).

**II.  Failure to Challenge Cell Phone Search**

**A.  Background Facts**

The parties dispute the facts that lead to the cell phone search.  Respondent cites to officers' testimony that during petitioner's interview at the police station, petitioner told officers they could "go through his phone if [they] wanted to, the same thing with the vehicle."  (2 RT

398; see also 2 RT 392 (Detective Bearor's testimony that he asked petitioner if he could download the contents of petitioner's phone and petitioner consented); 2 RT 397; 2 RT 402 (Bearor's testimony that he downloaded information from petitioner's cell phone "[b]ecause he gave consent").

Petitioner contends he "gave investigating detective Bearor consent to review the text messages on his cell phone from his girlfriend to show he was innocent." (ECF No. 4 at 7.) Later in the petition, petitioner makes a somewhat different statement. He states that he "gave detective Bearor permission to review certain texts stored in his cell phone in order to prove that the accusations by his ex-girlfriend were contrived in retaliation for ending the relationship. This permission was limited to a review of texts between Mr. Patterson and his ex-girlfriend related to the incident and accusations of November 24th, 2012." (Id. at 19; see also Decl. of G. Patterson (ECF No. 1-1 at 54).) In his traverse, petitioner makes an entirely different assertion. He contends that he specifically limited the search to "the texts from his ex-girlfriend during the time of the altercation for which he was being arrested." (ECF No. 16 at 7.) This third assertion is not supported by petitioner's declaration or by common sense. During the altercation, petitioner was driving while Lacey C. was in the car, and then, for a short time period of time, they were out of the car before Lacey C. left. Petitioner's assertion, raised for the first time in his traverse in this court, that Lacey C. or petitioner texted the other during this time will be disregarded as unbelievable on its face.

It is not disputed that once Detective Bearor left the room with petitioner's cell phone Bearor downloaded the entire contents of the phone, including petitioner's phone numbers, personal contacts, and thousands of text messages.

**B. Legal Standards for Search of Cell Phone**

Under the Fourth Amendment to the U.S. Constitution, individuals have the right to be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Generally, law enforcement officials must obtain a warrant before searching the contents of a phone. Carpenter v. United States, 138 S. Ct. 2206, 2214 (2018); Riley v. California, 573 U.S. 373, 401 (2014).

12

Consent is a recognized exception to the Fourth Amendment protection against unreasonable searches and seizures. United States v. Russell, 664 F.3d 1279, 1281 (9th Cir. 2012). However, "[t]he existence of consent to a search is not lightly to be inferred" and the government always has the burden of proving effective consent. United States v. Reid, 226 F.3d 1020, 1025 (9th Cir. 2000) (citation omitted). The scope of the search by consent is limited by the terms of its authorization. Walter v. United States, 447 U.S. 649, 656 (1980). Under the Fourth Amendment, the standard for measuring the scope of an individual's consent is "that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the [person giving consent]?" Florida v. Jimeno, 500 U.S. 248, 251 (1991); see also United States v. Marshall, 348 F.3d 281, 287 (1st Cir. 2003) (standard is "objective reasonableness not the consenting party's subjective belief"). A major factor in determining the scope of consent for a search is the expressed object of the search. United States v. Ross, 456 U.S. 798 (1982).

**C. Opinion of the State Court**

Because the opinion of the superior court is the last reasoned decision of a state court on this claim, it is the opinion reviewed by this court under 28 U.S.C. § 2254(d). The superior court held as follows:

> "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness –- what would the typical reasonable person have understood by the exchange between the office and the suspect? ... Generally, the scope of a warrantless search is defined by its expressed object. ... A consensual search may not legally exceed the scope of the consent supporting it. ... Whether the search remained within the boundaries of the consent is a question of fact to be determined from the totality of circumstances." (*People v. Crenshaw* (1992) 9 Cal. App. 4th 1403, 1408.) Officers are not required to inform individuals of their right to refuse to consent to police requests. (*People v. Kopatz* (2015) 61 Cal. 4th 62, 81.)

> In this case, petitioner states, he gave the investigating detective permission to review text messages on his cell phone from Lacey. C. to show that he was innocent. He later describes his consent as being limited to texts related to the incident the day before his arrest. He also states that he did not consent to downloading the contents of the phone. He also describes the reasons he cannot locate the videotape that he contends would support his argument regarding the nature of his consent.

If we assume for the sake of argument that petitioner's consent was limited as he describes, his statements would not act as a limitation. According to petitioner, he either directed officers to look for evidence that he was innocent or he directed them to look only for evidence related to the previous day's events, or both. If the limitation was evidence of innocence, then officers would have had to search the entire phone for that evidence. They would have found evidence of guilt in making a search for innocence. If the limitation was to evidence regarding the previous day's events, then by the time that officers interviewed defendant and received permission -- limited or not -- to search his cell phone, Lacey C. had been interviewed for a second time. She had told officers that the assault the day before occurred because she was trying to quit prostitution, that petitioner was her pimp and that she used MyRedBook.com. Thus, to search for information about the assault and its motivation, officers would have had to search the entire phone.

Further, petitioner says that he was prejudiced because the phone search was used to find Internet ads from Lacey C. and the phone number of Melissa Y. Petitioner's characterization of the evidence is incomplete. Both Lacey C. and Melissa Y. gave statements to police, including information about the Internet. Lacey C. also provided information about Alisandra R. According to the warrant affidavit, the affiant received Melissa Y.'s number from an officer who had taken Melissa Y.'s statement, not from petitioner's cell phone. It does not appear that officers relied on the information as petitioner described. Even if the prosecutor relied on information discovered during the search, it appears that he could have acquired similar information from different sources.

If a suppression motion had been filed, it would not have succeeded. Petitioner has also failed to show prejudice. Neither trial nor appellate counsel was ineffective for failing to pursue a futile challenge.

(ECF No. 14-3 at 3-4.)

**D. Was the State Court's Opinion Contrary to or an Unreasonable Application of Clearly Established Federal Law or Based on an Unreasonable Determination of the Facts?**

The state court's decision rested on two determinations that petitioner had not been prejudiced by any error of counsel in failing to seek to suppress the contents of the cell phone. First, the court found that even had petitioner's trial attorney brought a motion to suppress, that motion would have failed. The court determined that petitioner's consent for the cell phone search was sufficient to permit the detective to search the entire phone. Second, the state court found that petitioner failed to show that the information gleaned from the search of the cell phone prejudiced him. Because this court finds the second determination was not "so lacking in

14

1   justification that there was an error well understood and comprehended in existing law beyond

2   any possibility for fairminded disagreement," Richter, 562 U.S. at 103, it addresses only the

3   holding of the state court.

4        Respondent makes one argument that would, if accepted, negate the necessity of

5   reviewing the state court's decision under § 2254(d).  Respondent argues that petitioner was not

6   prejudiced by his attorney's failure to move to suppress the results of the cell phone search

7   because the state court did, on habeas, consider that argument.  Respondent's argument is

8   inapposite.  It ignores the directive of § 2254(d).  That section requires the federal court to

9   consider whether the state court decision denying petitioner's habeas claim was contrary to or an

10  unreasonable application of clearly established federal law or whether it was based on an

11  unreasonable determination of the facts.  Respondent's argument would have this court simply

12  accept the state court's determination that a motion to suppress would have failed without

13  question.  That approach might make sense if a motion to suppress was solely a matter of state

14  law, as was true in several cases cited by respondent.  See, e.g., Bolton v. Franklin, 191 F. App'x

15  780, 782 (10th Cir. 2006) ("[W]e will not second guess a state court's interpretation of its own

16  law on habeas review.  Given the [state court's] ruling rejecting on the merits Mr. Bolton's claim

17  that his conviction was improperly enhanced, he was not prejudiced by his state-court attorney's

18  failure to raise the claim. Accordingly, his ineffectiveness claim must fail." (internal quotation

19  marks and citation omitted).)  In that situation, this court would be required to defer to the state

20  court's determination of its laws.  But, any motion to suppress would necessarily have implicated

21  both state and federal constitutional requirements for searches.  Accordingly, respondent's

22  attempt to have this court simply accept the state court's Fourth and Sixth Amendment analyses

23  as correct should not control consideration of this issue.

24        As described above, the state court determined that petitioner failed to establish he was

25  prejudiced by the admission of evidence resulting from the cell phone search.  To prove prejudice

26  under Strickland, petitioner must demonstrate that there is a reasonable probability that but for

27  counsel's error, the result of the proceedings would have been different. Petitioner argues the

28  following prejudice resulted from the cell phone search:  (1) it led police to find internet ads for

15

escort services posted by Lacey C.; (2) it provided the police with Lacey C.'s e-mail address; (3) it lead the police to the website www.myredbook.com, which police then claimed was a site used to solicit prostitution; (4) it provided the police with Melissa Y.'s phone number; (5) the text messages were "used at trial against Mr. Patterson;" and (6) the prosecutor quoted extensively from the text messages during her closing argument.  (See Pet. (ECF No. 4 at 26-27); Traverse (ECF No. 16 at 15).)

The state court's opinion explicitly addresses only two of these six bases for prejudice: that the cell phone search was used to find Internet ads from Lacey C. and the phone number of Melissa Y.  While the state court did not explicitly discuss the other four arguments, this court assumes it considered, and rejected, them.  See Johnson v. Williams, 568 U.S. 289, 293 (2013) (federal court should assume an issue raised before the state court but not explicitly ruled on was considered on its merits absent evidence to the contrary).  Each alleged element of prejudice is discussed below.

### 1. Prejudice from Lacey C. Internet Ads

Petitioner first contends he was prejudiced because texts on petitioner's cell phone "were used to find ads for [Lacey C.]."  (ECF No. 4 at 26.)  Specifically, petitioner argues that in December 2012, Detective Hancock found text messages regarding an online website, www.myredbook.com, which he believed was used for soliciting prostitution.  Detective Hancock checked this site and was able to identify petitioner's "ex-girlfriend" advertising as an escort. Petitioner fails to show prejudice from Hancock's discovery of text messages regarding myredbook.com because officers knew before December 2012 that women working for petitioner used myredbook.com to advertise for prostitution.

Lacey C. was interviewed twice shortly after the November 23 events and before petitioner was arrested and his cell phone searched.  She was interviewed that day at the hospital. During that first interview, she directed Officer Goesch to myredbook.com, which she described as a website for prostitutes to advertise their services, to find Stephanie and Melissa who worked as prostitutes.  The following day she told Goesch that she, and other women, had worked as
////

prostitutes for petitioner.  Officers thus had notice prior to petitioner's arrest that women working as prostitutes for petitioner used myredbook.com to advertise their services.

In his traverse, petitioner adds a second argument that the cell phone search caused him prejudice from Lacey C.'s internet ads.  He contends that he was prejudiced not because cell phone texts led officers to find Lacey C.'s internet ads.  Rather, he argues that he was prejudiced by the fact that ads for Lacey C. were found on his cell phone.  Again, petitioner's cell phone was not the only connection between him and myredbook.com.  In addition to Lacey C.'s statements to police, Melissa Y. testified that petitioner helped with her myredbook.com posting.  Petitioner fails to show either that officers would not have had access to Lacey C.'s internet ads absent the cell phone search or that the fact the ad was found on his cell phone was particularly prejudicial given the other evidence that Lacey C. was working for him as a prostitute.

### 2. Prejudice from Lacey C.'s E-mail Address

Petitioner next argues that the cell phone search lead to Lacey C.'s e-mail address.  However, petitioner makes no attempt to explain why the possession of that e-mail address was prejudicial.  Without more, this court cannot credit petitioner's argument that the fact officers knew Lacey C.'s e-mail address prejudiced him.

### 3. Prejudice from Knowledge of Myredbook.com

As explained above, on November 23, 2012, the day before petitioner's arrest, Lacey C. told Officer Goesch that women working as prostitutes for petitioner used myredbook.com.  Petitioner fails to show that the fact that information downloaded from his cell phone after his arrest referenced myredbook.com caused him prejudice.

### 4. Prejudice from Melissa Y.'s Phone Number

Petitioner provides no explanation for his assertion that he was prejudiced because officers obtained Melissa Y.'s telephone number through the search of his phone.  The state court noted that, "[a]ccording to the warrant affidavit, the affiant received Melissa Y.'s number from an officer who had taken Melissa Y.'s statement, not from petitioner's cell phone."  Petitioner fails to make any argument to contradict this statement.  Again, without some attempt by petitioner to show the state court's decision was contrary to, or an unreasonable application of, clearly

17

1  established federal law or was based on an unreasonable interpretation of the facts, this court

2  cannot find that petitioner has met his burden under § 2254(d).

3  ### 5. Prejudice from Use of Text Messages at Trial

4  Petitioner is correct that there was extensive testimony at trial about text messages to and

5  from petitioner.  The police seized petitioner's cell phone at the time of his arrest, seized two cell

6  phones at petitioner's residence that belonged Alisandra R., and seized a fourth cell phone from

7  petitioner's car.  It is unclear from the parties' briefing if text messages used at trial were obtained

8  from all, or just some, of these cell phones.  Petitioner makes no attempt to clarify.  Nor does he

9  identify the evidence presented from text messages garnered from the cell phone searched during

10  petitioner's arrest.  Petitioner only states that the prosecutor in closing argument identified most

11  of the text messages as coming from the arrest-related cell phone search.

12  The prosecutor's argument was not evidence and the jury was so instructed.  (See 5 RT

13  1382 ("Nothing that the attorneys say is evidence.")  Yet petitioner's argument relies solely on

14  citations to the prosecutor's argument.  (See Pet. (ECF No. 4 at 12, 26).)  Absent a distinction

15  between evidence of text messages obtained from the first cell phone and text messages obtained

16  from the others, and some argument showing why the evidence of the text messages obtained

17  from the cell phone search were unduly prejudicial in light of the other evidence, it is not possible

18  to discern how petitioner was prejudiced by the cell phone text messages introduced at trial.

19  ### 6. Prejudice from Prosecutor's Argument re Text Messages

20  Again, the prosecutor's argument was not evidence.  Petitioner is not alleging that the

21  prosecutor committed some sort of misconduct in making these arguments.  Rather petitioner is

22  attempting to show that the prosecution case on the pimping charges was based largely on text

23  messages derived from the cell phone search.

24  Even considering the prosecutor's argument alone as potentially prejudicial, the

25  prosecutor did not rely solely on the text messages evidence.  The prosecutor's argument also

26  focused on Melissa Y.'s testimony and the evidence corroborating it (5 RT 1255, 1256, 1259,

27  1304); Lacey C.'s statements to police, her conflicting testimony in court, her telephone

28  conversations with petitioner while he was in jail, and her multiple arrests for prostitution (5 RT

1255-57, 1279, 1283-84); petitioner's telephone conversations with Alisandra R. while he was in jail (5 RT 1261); books authored by petitioner that included advice about pimping (5 RT 1255, 1279, 1280); and advertisements on myredbook.com for Alisandra R. and Lacey C. (5 RT 1290-91).

Given the substantial evidence that was not derived from the cell phone search and argument regarding petitioner's pimping activities, this court finds the superior court's conclusion that petitioner was not prejudiced by his counsel's failure to seek to suppress information retrieved during the cell phone search was not contrary to or an unreasonable application of clearly established federal law or based an unreasonable determination of the facts.

Petitioner's claim 1 should fail because he has not met the standards set out in 28 U.S.C. § 2254(d).

## II. Failure to Challenge Warrant

Petitioner next argues his attorney should have sought to suppress evidence resulting from a search of his home. He contends the warrant lacked probable cause and that some of the items seized were outside the scope of the warrant.

### A. Background Facts re Search Warrant

Hancock prepared the application for a search warrant.[4] In his affidavit, he stated that he was investigating possible pimping charges against petitioner after Lacey C. admitted in her November 24 interview that she had been working as a prostitute for him. He then set out extensive details of the evidence showing petitioner was a pimp for Lacey C. and Melissa Y. Those details included a number of text messages retrieved from petitioner's cell phone that indicated he was acting as a pimp for Lacey C., an interview with Melissa Y. in which she described working for petitioner as a prostitute, and myredbook.com advertisements for Lacey C. and Melissa Y. in December 2012 and January 2013.

Hancock then described drug evidence. On January 8, 2013, Hancock and other officers went to a house in Rio Linda where petitioner had directed SMUD to forward his bill.

---

[4] The January 18, 2013 search warrant and Detective Hancock's supporting affidavit are exhibits to the petition. (See ECF No. 1-1 at 1-34.)

19

1   Petitioner's car was parked in front of the house.  Officers searched garbage and recycling cans

2   on the street.  They found a bag containing 179 grams, or about .4 pounds, of marijuana leaves

3   and stems.

4        Officers returned to surveil the house in Rio Linda on January 15.  They again saw

5   petitioner's car.  A second car parked in the driveway was determined to belong to Alisandra R.

6   Hancock identified petitioner in the house when petitioner opened the door to speak with a cable

7   service worker.  Hancock concluded that petitioner was residing at this residence.  The SMUD

8   account for the residence was in the name of Alisandra R.  Alisandra R. was identified at trial as

9   the mother of one of petitioner's children.

10        The search warrant specified the following items:  (1)  marijuana and cannabis-related

11   products and paraphernalia;  (2) items showing who had control of the house being searched; (3)

12   personal computers; and (4) cell phones.

13        Hancock conducted the search of petitioner's residence.  That search recovered, among

14   other things, a book authored by petitioner and entitled "Pimp, the Manuscript, The Game is to Be

15   Sold Not Told."  (3 RT 840.)  Hancock also seized two cell phones that belonged to Alisandra R.,

16   a third cell phone from petitioner's car, and petitioner's computer.  (3 RT 842.)

17        **B. Decision of the State Court re Warrant Claims**

18        Like the prior claim, petitioner raised the ineffective assistance of counsel claims

19   regarding the failure to challenge the search warrant in his state habeas petitions.  Therefore, the

20   decision of the superior court is the last reasoned state court decision on these issues.

21        The superior court first noted that petitioner failed to provide documentation to support his

22   claim.  Petitioner provided the superior court only with a copy of the affidavit supporting the

23   search warrant.  Petitioner did not provide a copy of the warrant itself, and, the court noted that it

24   was not clear petitioner provided the court with the entire affidavit.  The court held that it was

25   "impossible to evaluate petitioner's claims without certainty about what the entire document

26   said."  (ECF No. 14-3 at 5.)  However, that said, the court went on to consider petitioner's claims

27   finding it "unlikely" from the exhibit provided that petitioner could prevail.  (Id.)  Because

28   petitioner did include a copy of the warrant with the habeas petition submitted to the Court of

Appeal, which summarily denied the petition, this court assumes the Court of Appeal rejected petitioner's claim on the grounds found by the superior court. (See Ex. A to Pet. for Hab. Corp. in Cal. Ct. App. (LD 9).)

With respect to the question of whether petitioner's trial attorney should have challenged the warrant on the grounds that it lacked probable cause, the superior court held that the affidavit provided probable cause for a search for evidence related to drug crimes and any motion to suppress it on those grounds would have been unsuccessful.

> The warrant sufficiently connected the garbage cans that contained marijuana with the house. The affidavit stated that the officers "observed the garbage can and recyclable can placed at the street accessible to the public." Petitioner would like the sentence to be read as stating that the officers saw the can after they had been placed at the street, but the sentence can as easily be read as meaning that the officers observed the cans when they were being placed at the street. Even if that were not so, however, the property description states that the house is semi-rural property in Rio Linda with a mail box at the end of the drive. At such a property, it is unlikely that garbage cans from one house could be confused with cans from another house.

> Further, "[t]he discovery of recently cut marijuana stems and leaves in a trash can that has been shown to contain defendant's residential trash establishes a fair probability (i.e., probable cause to believe) that contraband may be found in the residence." (*People v. Thuss* (2003) 107 Cal. App. 4th 221, 235.) Also, "while a third party could have put incriminating items in a garbage can left on a public street, certainty is not required at this [the warrant] stage." (*United States v. Washington*, 2012 U.S. Dist. LEXIS 119203 (E.D. Cal. Aug. 22, 2012), citations and internal quotations omitted.)

> Finally, the Medical Marijuana Program, Health & Safety Code section 11362.7 et seq., provides a defense for persons who qualify under the statute. The statutes do not legalize possession of possession or cultivation of marijuana apart from that defense, and they say nothing about the amount of marijuana that must be present before a search warrant issues. In addition, petitioner has failed to show any evidence that a medical marijuana defense might apply in this case.

> Petitioner relied on *United States v. Underwood* (9th Cir. 2013) 725 F.3d 1076, 1082-1083, which held that evidence of drug use or possession cannot be used to prove that the defendant possessed a different type of drug with intent to distribute. In *Underwood*, observation of a personal-use amount of marijuana in the home to be searched failed to support the conclusion that Underwood was a courier for an ecstasy trafficking organization or that the evidence of such trafficking would be found at Underwood's home. This case does not involve a personal use amount of marijuana. Nor is the

marijuana cited as evidence of trafficking of a different drug.

… [P]etitioner has failed to show lack of probable cause for issuance of the warrant [for drug evidence] or that officers who executed the warrant could not have relied in good faith on it. Trial counsel would not have prevailed if he had attempted to challenge the warrant on these grounds.

(ECF No. 14-3 at 6-7.)

The superior court also rejected petitioner's claim that the items seized exceeded the scope of the warrant.

"Particularity is the requirement that the warrant must clearly state was is sought . . . . It is familiar history that indiscriminate searches and seizures conducted under the authority of 'general warrants' were the immediate evils that motivated the framing and adoption of the Fourth Amendment . . . . [p] However, a warrant need only be reasonably specific . . . and the specificity required varies depending on the circumstances of the case and the type of the items involved. . . . The requirement of a reasonable particularity is a flexible concept, reflecting the degree of detail available from the facts known to the affiant and presented to the issuing magistrate." (*People v. Robinson* (2010) 47 Cal. 4th 1104, 1132-1133, internal citations and quotations omitted.)

The warrant affidavit indicated the petitioner used the Internet and cell phone text messages to communicate with prostitutes as part of his business. The affiant also described the way that computers and cell phones are used in drug trafficking. The affiant described the house in which petitioner, his computers and his phones would be found. In light of the information available to the officers, the request was sufficiently specific.

(ECF No. 14-3 at 7-8.)

Finally, the superior court held that even if petitioner's trial attorney had successfully challenged the warrant, petitioner failed to show a reasonable probability the result of the proceedings would have been different.

In addition, petitioner fails to show that the outcome of his case would have been different if appellate counsel had successfully challenged trial counsel's failure to challenge the warrant. First, petitioner contends police would not have had access to petitioner's book if they had not found it in petitioner's house. The officers, however, had already located the book through a Google search, and the fact that the book was unavailable on Amazon.com on a particular date fails to show that its discovery was anything other than inevitable. (*See People v. Evans* (2011) 200 Cal. App. 4th 735, 755 [where prosecution can establish that information would inevitably have been discovered by lawful means, exclusionary rule

1

does not apply].)

2

Petitioner has cited the closing argument of the district attorney, but
that argument is not evidence.  While the district attorney did
introduce evidence of texts discovered in the search, the People could
have relied on the statements of the prostitutes themselves regarding
their relationships with petitioner and the relationships of others that
they had observed.  While the witnesses may have had second
thoughts prior to trial, their original statements were available.

3

4

5

6

Petitioner has concluded that admission of evidence from the search
was prejudicial to petitioner, but he ha[s] made no attempt to
compare the evidence from the search with other evidence in the
case.  In habeas, it is petitioner's burden to show prejudice and he
has failed to do so.

7

8

9

(ECF No. 14-3 at 8.)

10

### C. Analysis re Failure to Challenge Probable Cause for Warrant

11

Petitioner argues extensively about the standards for challenging a search warrant,

12

including contending that it is the government's burden to show probable cause for the warrant.

13

However, that is not the claim before this court.  Rather, petitioner's claim is that his trial attorney

14

was constitutionally ineffective for failing to move to suppress the results of the search on two

15

grounds: (1) that the warrant lacked probable cause for the search of the residence and car; and

16

(2) that the items seized exceeded the scope of the warrant.  Under Strickland, in addition to

17

showing that his trial attorney acted unreasonably in failing to challenge the warrant, petitioner

18

must also show he suffered prejudice as a result of this failure.  The questions for this court are

19

even further removed from the Fourth Amendment issue.  This court must determine whether the

20

state court's decision on the ineffective assistance of counsel claim was contrary to or an

21

unreasonable application of clearly established federal law or was based on an unreasonable

22

determination of the facts. 28 U.S.C. § 2254(d).

23

As set out above, the superior court held that the warrant affidavit provided sufficient

24

probable cause for a search for evidence of drug-related crimes.  For purposes of analyzing this

25

claim, this court will assume, as the superior court did, that the warrant sought only evidence of

26

the use, cultivation, sales, and trafficking of narcotics and dangerous drugs.  After describing the

27

results of investigations into petitioner's pimping activities, the affidavit stated that on January 8,

28

2013, officers observed a car registered to petitioner in front of the house in Rio Linda.

23

1          Detectives De[B]olt and Keller also observed the garbage can and
     recyclable can placed at the street accessible to the public. Detectives
2    DeBolt and Keller looked in the garbage cans and removed the trash
     contents and secured the trash in the back of Detective Keller's
3    unmarked police vehicle.

4          Detectives DeBolt and Keller transported the trash to the Elk Grove
     Police Department where they went through the contents. Detectives
5    DeBolt and Keller located approximately 179.75 grams of dried
     marijuana leafs [sic] and stems in a black garbage bag. They also
6    located a receipt condoms and one new mouth wash bottle and one
     lavender linen spray for Crowne Plaza Hotel's Resort commonly
7    used in hotel rooms.

8    (ECF. No. 1-1 at 26-27.) Detective Hancock stated that it was his belief that petitioner "cultivates

9    and or sells marijuana based on the contents of the garbage receptacle." (Id. at 28.) Hancock

10   then went on to recount that his experience, and the experience of other officers, was that people

11   using or selling marijuana may keep in their residences and vehicles:  paraphernalia for, and items

12   to document, the use, sale, and cultivation of the drug; items of personal property to show a

13   conspiracy to use, sell, or cultivate the drug; and items tending to show the identity of persons

14   who had control over the premises to be searched.  Computers and cell phones were specifically

15   identified as items that may include information relevant to drug use, sales, and cultivation.

16   Hancock further averred that those involved in drug sales were almost always involved in a

17   conspiracy to violate the law.  He identified cell phones, in particular, as potentially containing

18   information regarding customers and suppliers.  (Id. at 28-31.)

19         Hancock describe the house to be searched as on a street "surrounded by rural land and

20   residences."  (ECF No. 1-1 at 31.)

21         Petitioner argues the warrant lacked probable cause to search for drug evidence because:

22   (1) the affidavit did not show the garbage cans were associated with the residence; (2) the

23   amount of marijuana found was insufficient to support a possible charge of cultivation, sales or

24   trafficking of the drug; (3) the affidavit was based primarily on detectives' opinions; and (4) the

25   marijuana found could have been for medical use, which was legal at the time, and therefore did

26   not "prove" a crime.

27         The state court rejected petitioner's first contention on two grounds.  First, the court

28   pointed out that the affidavit could be read to mean that officers saw the garbage can being placed

24

outside the residence.  Petitioner argues that the such an interpretation is untenable because the affidavit does not describe a person placing the garbage can nor does it allege any association between that person and the residence.  This court finds that the state court's interpretation of the affidavit on this point is not so untenable that "no reasonable jurist" would so interpret it.  See Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (federal court must defer to state court decision unless it is objectively unreasonable).  Moreover, a fair reading of the affidavit is that the garbage can was outside the residence in question, whether the affiant saw it being place there or simply saw it there.  Petitioner fails to show the state court's construction of the facts is unreasonable under § 2254(d)(2).

The state court's second basis for rejecting petitioner's argument that there was an insufficient showing that the garbage cans were associated with the residence is that the affidavit identified the area as "semi-rural" with a "mailbox at the end of the drive."  Petitioner argues that the court's description, again, misstates the affidavit.  It does not.  The affidavit described the house as being on a street surrounded by rural land and residences.  Describing that area as "semi-rural" is not a stretch.  Further, the fact that the residence had its own, distinct driveway would be further evidence that any confusion that the garbage can belonged to a different household was very unlikely.

With respect to petitioner's argument that the amount of marijuana found in the garbage can, less than half a pound, was insufficient to establish probable cause for a possible crime of selling or cultivating, petitioner provides no competent authority for that proposition.  Petitioner simply cites to a website regarding the amount of marijuana a person might gather from one marijuana plant.  However, that argument assumes that probable cause for marijuana possession, cultivation, or sale required the reviewing judge to rule out the possibility that the marijuana was used for medicinal purposes.  Petitioner cites no authority for that argument.  In fact, authority is to the contrary.  See United States v. Carpenter, No. CR 09-312-VBF, 2010 WL 11545073, at *3 (C.D. Cal. Jan. 13, 2010) ("There is no obligation to investigate compliance with California's medical marijuana laws to determine whether probable cause exists for a marijuana offense.") (quoting People v. Fisher, 96 Cal. App. 4th 1147, 1149 (2002)).

1    Petitioner similarly fails to provide any authority for his contention that a warrant may not

2    be issued based on the opinions of the affiant. Petitioner cites several cases in support of this

3    argument. (See ECF No. 4 at 35 n.14.)  None are on point because, in each, the opinion

4    challenged was used to establish probable cause.  In the present case, the opinions were used to

5    define the scope of the search  For example, in United States v. Cervantes, 703 F.3d 1135, 1139-

6    40 (9th Cir. 2012), the defendant was the recipient of a box that had come from a suspected

7    narcotics "stash house."  The court held that a warrant affidavit that provided no basis, besides an

8    officer's conclusory statement, to think the house was used to store narcotics did not justify a

9    search of the box.  In the present case, officers did, in fact, find narcotics to support a search of

10   petitioner's house.  See also Spinelli v. United States, 393 U.S. 410, 418 (1969) (officer's

11   statement that defendant "known" to the FBI as a gambler insufficient to support probable cause

12   to suspect defendant's residence contained evidence of gambling); Illinois v. Gates, 462 U.S. 213,

13   238, 241 (1983).

14       Petitioner also relies on United States v. Underwood, 725 F.3d 1076 (9th Cir. 2013).  In

15   Underwood, the Court of Appeals considered whether probable cause supported a search

16   warranted issued for evidence of trafficking the drug ecstasy.  The affiant listed only two factual

17   bases for the warrant:  (1) a personal-use amount of marijuana found at the residence, and (2) the

18   fact the defendant had delivered crates, with no description of what those crates contained, to

19   known ecstasy traffickers three months earlier.  725 F.3d at 1082-83.  The affiant then relied on

20   his experience to provide information about the ways in which drug traffickers maintain records.

21   The Ninth Circuit held the warrant lacked probable cause because there was no established

22   connection between the small amount of marijuana and trafficking in ecstasy, there was no

23   indication that the crates petitioner delivered one time three months earlier contained ecstasy, and

24   the affiant's opinions were not based on any facts that might show the defendant was trafficking

25   ecstasy. Id. at 1083-84.

26       In the present case, officers found a significant amount of marijuana in garbage connected

27   to a residence in which petitioner was living.  That finding created a fair probability that residents

28   of the home were using, cultivating, and/or selling marijuana.  Relying on the finding of the

1    leaves and stems of marijuana, Detective Hancock's opinions were then used to show what sort of

2    items someone using, cultivating and/or selling marijuana may use.  Underwood does not require

3    a different conclusion because the expert opinions lacked any initial basis for finding probable

4    cause that the suspect was likely involved in illegally trafficking ecstasy.

5        Nor does petitioner show that the marijuana leaves and stems found could not be the basis

6    for potential charges of using, cultivating, or selling, including a conspiracy to sell, marijuana.

7    While petitioner takes issue with the affidavit's attempt to establish a basis for a trafficking claim,

8    he fails to show that any of the items seized were seized based on the assertion that some items

9    could be indicative of trafficking or transporting marijuana.

10       Because petitioner fails to show the warrant lacked probable cause, he does not

11   demonstrate that had his trial counsel challenged the search warrant, that challenge would have

12   succeeded.

13       **D.  Analysis re Failure to Challenge Scope of Warrant**

14       The Ninth Circuit defined the issue of specificity as having two parts: "particularity,"

15   which demands that the warrant clearly "state what is sought," and "breadth," which "deals with

16   the requirement that the scope of the warrant be limited by the probable cause on which the

17   warrant is based."  United States v. SDI Future Health, Inc., 568 F.3d 684, 702 (9th Cir. 2009)

18   (citation omitted).

19       Petitioner argues that the superior court misread the warrant because it does not identify

20   any evidence regarding pimping or pandering in the items to be seized.  As noted above, the

21   superior court did not have a copy of the warrant, only the affidavit.  Therefore, it's decision

22   cannot be the last reasoned decision of a state court on the issue.  Because petitioner did supply

23   the Court of Appeal and California Supreme Court with a copy of the warrant, and both simply

24   denied the petition without comment, this court assumes that denial was on the merits, Richter,

25   562 U.S. at 99, and must consider any reasonable basis for the denial of the claim, id. at 83.

26       Petitioner is correct that the warrant itself did not specify any items to be seized related to

27   pimping or pandering.  Respondent argues that the facts set out in the affidavit regarding pimping

28   were sufficient.  It appears to be undisputed, as the superior court noted, that the affidavit

established probable cause for a search for items related to pimping.  While respondent cites no authority for the proposition that the specificity requirement can be applied to the affidavit alone, there is some case law suggesting that an affidavit which is "incorporated" into the warrant may cure the warrant's lack of specificity.  See United States v. Morton, 776 F. App'x 395, 397 (9th Cir. 2019) (citing United States v. Prop. Belonging to Talk of the Town Bookstore, Inc., 644 F.2d 1317, 1319 (9th Cir. 1981)), cert. denied, 140 S. Ct. 882 (2020); United States v. Baker, 888 F. Supp. 1521, 1530 (D. Haw. 1995) ("The standards guiding executing officers can be wholly contained within the four corners of the search warrant, or they can be incorporated into the search warrant from the supporting affidavit." (citing United States v. Hillyard, 677 F.2d 1336, 1340 (9th Cir.1982)).  The warrant in the present case expressly incorporated the affidavit. (ECF No. 1-1 at 9.)

Whether or not the warrant can be said to have been cured by the affidavit, respondent establishes that the evidence would not have been excluded because officers acted in good faith in seizing items related to pimping.  The good faith exception to the exclusionary rule provides:

> [W]hether to suppress evidence under the exclusionary rule is a separate question from whether a Fourth Amendment violation has occurred. See Herring v. United States, 555 U.S. 135, 140, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009); Leon, 468 U.S. at 906, 104 S.Ct. 3405. The exclusionary rule applies only when "police conduct [is] sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." Herring, 555 U.S. at 144, 129 S.Ct. 695. The exclusionary rule does not apply "when law enforcement officers have acted in objective good faith or their transgressions have been minor," because "the magnitude of the benefit conferred on such guilty defendants offends basic concepts of the criminal justice system." Leon, 468 U.S. at 908, 104 S.Ct. 3405. Of crucial importance here, suppression of evidence is not appropriate "if the police acted 'in objectively reasonable reliance' on the subsequently invalidated search warrant." Herring, 555 U.S. at 142, 129 S.Ct. 695 (quoting Leon, 468 U.S. at 922, 104 S.Ct. 3405). The reasonableness of the executing officers' reliance on the warrant and whether there is "appreciable deterrence" sufficient to justify the costs of suppression here must be taken into account. Herring, 555 U.S. at 141, 129 S.Ct. 695 (quoting Leon, 468 U.S. at 909, 104 S.Ct. 3405).

United States v. Henderson, 906 F.3d 1109, 1117–18 (9th Cir. 2018), cert. denied, 139 S. Ct. 2033 (2019); see also United States v. Michaelian, 803 F.2d 1042, 1047 (9th Cir. 1986) ("[S]uppression is proper only where the officers were dishonest or reckless in preparing their

affidavit, or could not have harbored an objectively reasonable belief in the existence of probable cause due to a facial deficiency in the warrant." (internal citation omitted)).

The parties do not dispute that the affidavit gave officers probable cause to search for evidence of pimping. The failure to include items related to pimping in the description of items to be seized does not appear to have been done for any improper purpose. Accordingly, items seized related to pimping would not have been excluded at trial. Any objection to the warrant's specificity on the grounds that it did not cover the seizure of items relating to pimping would have failed to exclude the results of the search.

Petitioner also argues that the cell phone searches were overbroad. However, the cases he cites involved warrantless searches. (See ECF No. 4 at 52.) Courts have recognized that where a warrant authorizes a cell phone search for certain information, officers will not necessarily know what a digital file contains until they open it. See United States v. Comprehensive Drug Testing, Inc., 621 F.3d 1162, 1176 (9th Cir. 2010) (The problem with searching digital files, as opposed to paper files, is that "[t]here is no way to be sure exactly what an electronic file contains without somehow examining its contents—either by opening and looking, using specialized forensic software, keyword searching or some other such technique."), overruled on other grounds as stated in Demaree v. Pederson, 887 F.3d 870 (9th Cir. 2018). The Ninth Circuit has also held that "the potential intermingling" of relevant evidence and personal information "does not justify an exception or heightened procedural protections for computers or cell phones beyond the Fourth Amendment's reasonableness requirement." United States v. Giberson, 527 F.3d 882, 889 (9th Cir. 2008). In the present case, the affidavit supported probable cause for a search for both evidence of pimping and evidence of drug crimes. The affidavit further provided a basis for thorough searches of digital files for evidence of both types of crimes. Petitioner fails to show the items seized during the search were outside the scope of the warrant or of the officers' good faith interpretation of the warrant. Accordingly, he fails to show a challenge on that basis would have succeeded at trial.

////

////

1

**E. Prejudice from Search**

2      Even if petitioner has shown the warrant lacked probable cause and/or the items seized

3  exceeded the scope of the warrant, petitioner fails to show the trial court's determination that he

4  did not establish prejudice was unreasonable.

5      Petitioner first points to the seizure and use of the book, <u>Pimp, the Manuscript</u>.  The

6  prosecution used the book during trial to demonstrate that actions taken by petitioner mirrored

7  actions he recommended in the book.  However, petitioner fails to show officers would not have

8  had access to the book absent the search.  Without any support, petitioner claims the book was no

9  longer available for purchase as of the date of the investigation.  (<u>See</u> ECF No. 4 at 8 n.3.)  But,

10  officers were aware of the book prior to the search of petitioner's home.  (4 RT 939.)  In addition,

11  a version of the book was found on the computer seized from petitioner's home.  (4 RT 939-40.)

12  The state court's determination that officers could very well have obtained the book by other

13  means was not unreasonable.  <u>See</u> <u>United States v. Davis</u>, 332 F.3d 1163, 1171 (9th Cir. 2003)

14  (inevitable discovery is an exception to the exclusionary rule).

15      With respect to the use of information gleaned from  petitioner's computer and from the

16  cell phones seized, petitioner, again, fails to show how that evidence was so prejudicial in

17  comparison to other evidence introduced at trial that there is a reasonable probability that, had it

18  been excluded, the result of the proceedings would have been different.  As he does with respect

19  to the prior claims, petitioner simply cites to the prosecutor's argument to show the evidence was

20  prejudicial.  (<u>See</u> ECF No. 4 at 11-12.)  Yet testimony about Lacey C.'s statements to police,

21  Lacey C.'s arrests for prostitution, Melissa Y.'s statements to police and her testimony,

22  petitioner's prior history of pimping, his jail conversations with Lacey C. and Alisandra R., and

23  online advertisements for all three women was sufficiently weighty evidence alone to convict

24  petitioner of the three pimping crimes.  Petitioner's claim 2 should fail because he does not

25  establish a reasonable probability that but for counsel's failure to object to the evidence gleaned

26  from the search, the result of the proceedings would have been different.

27  ////

28  ////

1  **III.   Ineffective Assistance of Appellate Counsel**

2          Petitioner fails to meet his burden of showing the state court acted unreasonably in

3  rejecting his claims of ineffective assistance of trial counsel.  Because those claims are

4  unsuccessful, there is no prejudice from any failure of appellate counsel to raise the claims on

5  appeal.  Claim 3 should be denied as well.

6                                                    **CONCLUSION**

7          For the foregoing reasons, the Clerk of the Court is HEREBY ORDERED to randomly

8  assign a district judge to this case; and

9          IT IS RECOMMENDED that petitioner's petition for a writ of habeas corpus be denied.

10          These findings and recommendations will be submitted to the United States District Judge

11  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within thirty days after

12  being served with these findings and recommendations, any party may file written objections with

13  the court and serve a copy on all parties. The document should be captioned "Objections to

14  Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be

15  filed and served within seven days after service of the objections.  The parties are advised that

16  failure to file objections within the specified time may result in waiver of the right to appeal the

17  district court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).  In the objections, the

18  party may address whether a certificate of appealability should issue in the event an appeal of the

19  judgment in this case is filed.  <u>See</u> Rule 11, Rules Governing § 2254 Cases (the district court must

20  issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

21  Dated:  November 18, 2020

22

23  DLB:9
    DB/prisoner-habeas/patt0654.fr

24                                                                          _____
                                                                           DEBORAH BARNES

25                                                                         UNITED STATES MAGISTRATE JUDGE

26

27

28